## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| Lorraine Dougherty, individually and on behalf of all others similarly situated, | 2:23-cv-00456 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kohl's, Inc., | |
| | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Kohl's, Inc. ("Defendant") sells textile products under store and national brands represented as made from bamboo fibers when they consist mainly of materials other than bamboo ("Products").



2. These representations appeal to the growing number of consumers who value environmentally-friendly materials, because bamboo is a natural grass that grows quickly with little relative need for fertilizer, pesticides, and water.

3. Moreover, bamboo is absorbent, porous and has good breathability to help the wearer stay cooler.

4. Mechanically-processed bamboo is known as bamboo linen or bast fiber and is made using the same process as flax and hemp linen.

5. The representations are misleading because the Products are not made of bamboo fibers, but rayon, a manufactured fiber composed of regenerated cellulose. 16 CFR 303.7(d).

6. Rayon is made by taking purified cellulose from a cellulose precursor and converting it into a viscous solution by dissolving it in one or more chemicals, such as sodium hydroxide.

7. According to the Environmental Protection Agency ("EPA"), the manufacturing process further purifies the cellulose, altering its physical form and modifying the molecular orientation within the fibers and its degree of polymerization to create rayon.

8. The chemical solution is forced through spinnerets into an acidic bath where it solidifies into fibers.

9. The labeling and advertising of the Products is contrary to federal regulations which require the fibers be identified with the generic name of rayon. 16 CFR 303.6(a).

10. By describing and labeling the Products with the unqualified term, "Bamboo," purchasers will expect all of their fibers are from the bamboo plant. 16 CFR § 303.27.

11. Defendant's other representations promote the environmental benefits of bamboo, even though the Products are made from rayon.

12. For instance, it describes one mattress pad purporting to be bamboo as appealing to

the purchaser's "desire to help the planet."

13. For other products, it uses an official looking logo with the statement, "Cleaner Solutions," which it specifies means "[p]roduced free of harmful chemicals, using clean, non-toxic materials."

14. Elsewhere, its labeling emphasizes that the Products were "made using materials tested for harmful substances and manufactured in environmentally friendly facilities that have safe and socially responsible work practices."

15. These environmental claims are misleading because manufacturing cellulose products like rayon emits hazardous air pollutants including carbon disulfide, carbonyl sulfide, ethylene oxide, methanol, methyl chloride, propylene oxide, and toluene. 40 C.F.R. Part 63, Subpart UUUU ("National Emission Standards for Hazardous Air Pollutants for Cellulose Products Manufacturing"); 40 C.F.R. § 63.5480.

## Jurisdiction and Venue

16. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

17. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

18. Plaintiff is a citizen of Florida.

19. Defendant is a citizen of Delaware and Wisconsin.

20. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

21. The members of the class Plaintiff seeks to represent are more than 100, because the Products have been sold for several years, with the representations described here, at Defendant's

stores and from its website, in the States covered by Plaintiff's proposed classes.

22. Venue is in this District, with assignment to the Milwaukee Division, because (1) Defendant resides in this District because amongst the districts of this State, it has its most significant contacts here, with its principal place of business is in Menomonee Falls, in Waukesha County and (2) a substantial part of the events or omissions giving rise to these claims occurred here, including the decisions related to the representations and/or omissions identified.

## Parties

23. Plaintiff Lorraine Dougherty is a citizen of Wauchula, Florida, Hardee County.

24. Defendant Kohl's Inc. is a Delaware corporation with a principal place of business in Menomonee Falls, Wisconsin, Waukesha County.

25. Defendant is the largest department store chain in the United States, with over 1,000 stores, and operator of its eponymous website.

26. Defendant sells products labeled as bamboo under numerous store brands including Happitat and Simply Vera (Vera Wang) and national brands.

27. The prices vary depending on whether the item is a set of bath towels or mattress protector.

28. Regardless of the item, a comparable non-bamboo version will cost approximately at least twenty percent less than a bamboo option.

29. For instance, the Elle Décor bamboo sheets costs between $150 and $190, while a comparable set of sheets represented as cotton costs between $120 and $150.

30. As a result of the false and misleading representations, the Products are sold at a premium price, higher than similar products, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

31. Plaintiff purchased the Products on one or more occasions within the statutes of limitations for each cause of action alleged, at Defendant's stores in locations that may include Brandon, Florida and/or its website, and/or among other times.

32. Plaintiff believed and expected the Products were bamboo and contained more bamboo than they did, based on the labeling, website statements, tags, and/or other representations.

33. Plaintiff sought to purchase textiles made from and containing bamboo because she believed it was a more natural fiber which was sustainable and did not harm the environment.

34. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Products, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through in-store, digital, audio, and print marketing.

35. Plaintiff bought the Products at or exceeding the above-referenced price.

36. Plaintiff paid more for the Products than she would have had she known they were not entirely bamboo and contained less bamboo than represented, and that their environmental representations were misleading based on the use of rayon instead of bamboo.

37. Plaintiff chose between Defendant's Products and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

38. The Products were worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

39. Plaintiff intends to, seeks to, and will purchase the Products again when she can do so with the assurance their representations are consistent with its abilities, attributes, and/or composition.

40. Plaintiff is unable to rely on the labeling and representations not only of these

Products, but other similar textiles represented as bamboo or containing bamboo, because she is unsure whether those representations are truthful.

41. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other textiles represented as bamboo or containing bamboo.

## Class Allegations

42. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Products during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in Iowa, Idaho, Montana, Wisconsin and Arizona who purchased the Products during the statutes of limitations for each cause of action alleged.

43. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

44. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

45. Plaintiff is an adequate representative because her interests do not conflict with other members.

46. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

47. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

48. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

49. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA") § 501.201 et seq, and/or Wisconsin Unfair
Trade Practices Act ("UTPA"), Wis. Stat. § 100.20.
(Florida Class)

50. Plaintiff incorporates by reference all preceding paragraphs.

51. Plaintiff believed the Products were bamboo and/or contained bamboo.

52. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

53. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

54. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent, Wisconsin and/or the consumer protection statute invoked by Plaintiff.

55. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

56. Defendant's conduct violates Wisconsin Unfair Trade Practices Act ("UTPA"), Wis. Stat. § 100.20.

57. Wis. Stat. § 100.18(1) which prohibits representations that are untrue, deceptive and/or misleading.

58. Class members "suffer[ed] pecuniary loss because of a violation" by Defendant of 100.18. Wis. Stat. § 100.18(11)(b)(2).

7

59. Class members are entitled to damages, including "costs, including reasonable attorney fees," and other relief which the court deems proper. Wis. Stat. § 100.18(11)(b)(2).

60. Class members are entitled to punitive damages. Wis. Stat. § 100.20(5).

61. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

62. The Products were manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that they were made entirely or predominantly from bamboo.

63. Defendant directly marketed the Products to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, its website and targeted digital advertising.

64. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

65. Defendant's representations about the Products were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant they were made entirely or predominantly from bamboo.

66. Defendant's representations affirmed and promised that the Products were made entirely or predominantly from bamboo.

67. Defendant described the Products so Plaintiff and consumers believed they were made entirely or predominantly from bamboo, which became part of the basis of the bargain that it would conform to its affirmations and promises.

68. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

69. This duty is based on Defendant's outsized role in the market for these types of Products, a trusted seller of everyday items.

70. Plaintiff recently became aware of Defendant's breach of the Products' warranties.

71. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

72. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Products.

73. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

74. The Products did not conform to their affirmations of fact and promises due to Defendant's actions.

75. The Products were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because they were marketed as if made entirely or predominantly from bamboo.

76. The Products were not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiff and class members, to obtain textile products made from sustainable and environmentally-friendly sources that was durable and soft, and they relied on Defendant's skill and judgment to select or furnish such a suitable product.

77. Plaintiff and class members would not have purchased the Products or paid as much

if the true facts had been known, suffering damages.

## Negligent Misrepresentation

78. Defendant had a duty to truthfully represent the Products, which it breached.

79. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a leading name in home goods, trusted by consumers whether it was their own store brands or those of third parties.

80. Defendant's representations and omissions regarding the Products went beyond the specific representations on the labeling, website and/or packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

81. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

82. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

83. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

84. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Fraud

85. Defendant misrepresented and/or omitted the attributes and qualities of the Products, that they were made entirely or predominantly from bamboo.

86. Moreover, the records Defendant is required to maintain, and/or the information

inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

## Unjust Enrichment

87. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: April 7, 2023

                                                  Respectfully submitted,

                                                  /s/Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com